42292 United States v. Todd Collins. Mr. Jacobson, good morning. Good morning, Judge. If I may, Attorney Meisner is going to take five minutes of appellant's time, and if I may, I'd also like to reserve a minute. Yes, a moment is rather difficult to determine. Yes. Yes, you may. Thank you, Judge. I'd like to begin by summarizing in a brief way, from Faust's point of view, where we are post-Mathis and post-Tavaris. I think it's just a sort of, in an outline form, I'll try to describe where we are from Faust's position, if I may. And then if I have time, both with respect to resisting arrest and the solemn battery on a police officer. And if I have time, I'd like to go back to an issue about preservation of what I preserved or didn't below. But for resisting arrest, if the second section of resisting arrest is not a violent felony, and we now know the second section is not a violent felony post-Johnson, and the government has acknowledged this. And if the statute is not indivisible, which the government admitted functionally in their brief, then resisting arrest is simply not a violent felony. That's the end of that inquiry. If this court were to decide that resisting arrests were indivisible, notwithstanding everything else we've just talked about, then Faust admits that this court should take a fresh look under Johnson 1 to determine whether or not Alameda still controls. Now, Tavaris said, we're not going to take a fresh look. And I would like to say why I think this is a different situation, and why the Tavaris court might have looked at it differently. There are two reasons. One, in Tavaris, it was a guideline case, while in here, it's an ACCA case. And the result of it being an ACCA case is that the sentence that Faust has received, if the ACA label continues, is above the statutory maximum. That is, the statutory maximum is exceeded, which was 10 years, is now exceeded. And that sets up, I suggest, a different situation than was the case in the Tavaris court. And as Starr decides, this is not just like a mathematical rule, that there are equitable considerations involved. We're trying to understand what's really good law, and there are different priorities of what to balance. That's an ACCA case, that there are Sixth Amendment issues that are at play, and that he's going to be serving a longer sentence than the maximum sentence. He could have been sentenced to under the maximum, are all reasons why this court could take a fresh look at the issue of whether or not Alameda is still controlled. So we submit to you for that reason, and also in Tavaris, the government took the position, and so did the defendant in Tavaris, that the statute was divisible. And I think that's also significant, which is not the case here. Because if you were to accept the fact, if the court was simply to accept and not look at it further, that the statute were divisible, then all the cases that got decided in the past by this court, which looked at resisting arrest, and looked at both the force aspect of it and a risk aspect of it, those cases don't have to be looked at as carefully as they do if the statute is an indivisible statute. So for those reasons, I think I submit that the court should consider looking at that afresh. But it doesn't hold true for the reasons I said at the outset, which is that the statute is indivisible, it's been admitted, the second section, under Johnson 2, no longer applies as a possible basis for that, for being a violent felony, and therefore nothing further needs to be developed with respect to resisting arrest. With respect to assault and battery, ABPO, again, ABPO is a very different offense than ABDW. ABDW, in the Ferris courts looking at it, is talking about the fact that there's a weapon involved that makes it that. But aside from the fact that there's a weapon involved, which isn't the case, you can just have a mere touching and just an offensive touching, is that when you have assault, battery, dangerous weapon, you don't have offensive touching as one of the alternative elements, while you do in assault and battery or police violence. And there's a very strong law that offensive touching and harmful battery are indivisible. And there is a case that was cited earlier, so I'd like to mention it. It's Commonwealth v. Davis. It's at 83 Mass. App. Court, 1103. It's a 2013 case, which talks about the fact that unanimity is not required between offensive touching and harmful touching. So that's a different kind of proposition altogether than the court considered in Tavares. Tavares never needed to consider that issue. It wouldn't have been relevant to consider that issue. So I submit Tavares doesn't have any impact on the AB part of ABPO for that reason, in terms of the harmful aspect of it. In terms of the reckless aspect of it, there's also a case law that says, in Massachusetts, that Tavares did consider, that says that it is, that jury unanimity is not required, and therefore if jury unanimity is not required, it should be considered an invisible statute. Both parts doesn't matter. The jury doesn't have to tell us which they're relying on. Now, what Tavares court does, and I submit we don't have to reach that for the reasons that we're just talking about, the distinguished ABPO from ABDW, but where do we reach recklessness? Let me just back up and say that hopefully more clearly. If the court were to agree that the assault and battery aspect of ABPO, because of the offensive touching aspect of it, and because of the fact that it is an indivisible idea itself between harmful and offensive, if the court were to agree with that, then that section doesn't apply. So the question then we could still turn to, the section, is there recklessness? That's a separate idea. Now, in Massachusetts, the Tavares court itself recognizes a number of cases that cite to the fact that the harmful and reckless aspects of this offense do not require jury unanimity. That is, both of them can be presented, and they do not require jury unanimity. And the Tavares court looked at that. And they said, well, that's true. There's law like that, and there's no doubt that there is law like that. So if you have a case, and they cite it, like Minestrata, if I've pronounced it correctly, they say, let's look at Minestrata. So if you follow the reasoning of the Tavares court, Minestrata, we know, by reading the case, was tried without jury unanimity between those two principles. It was actually tried without jury unanimity between those two principles. There was an appeal on those grounds. And the Massachusetts appeals court, which was the highest court to consider the matter because the Massachusetts Supreme Court did not elect to take it up for further appellate review, said, that's the correct law. You don't get jury unanimity on those two issues. Is that the end of your thought? No. Well, how long will your thought take? Well, that thought will just take another minute. Go ahead. Thank you, Judge. So if we apply the informed prophecy analysis to that, if we apply it, then it would turn out that even in that very case, where we know what the law was and we know what happened, he would not be still nonetheless declared to have been a violent felon for that conviction. Under ACC law, we don't look into the future. We don't look abstractly. It's not an abstract question. What is the law? It's a historical question. That's why there's a Sixth Amendment aspect to it under the ACC. Maybe not in the guidelines. But both statutory and constitutional grounds and Mathis tells us they're interested in a historical question. What is the law as of the time this is all happening? Not what it might be. Before you sit down, just two questions. First, assume it's divisible at least with respect to recklessness on ABPL and the other part of the statute. Assume that that's divisible. Since we conclude that. What do you think should then happen in the case? If you conclude that it's divisible, then I think the question of recklessness ought to be discussed. I'm sorry. Suppose we say it's divisible and recklessness qualifies. Okay. What should happen in the case? Then I think we need to send it back to Judge Posner. To do what? Because the summary documents are here. What should then happen? Well, they haven't been argued. They haven't been looked at. I mean, you may have looked at them, but the government has clearly looked at them. I've looked at them, too. What I mean is there haven't been an issue. So you agree with the government that at that point remand is the right course? If you were to decide that recklessness is a violent felony, would constitute a violent felony, and that the statute is a divisible statute, then we need to determine whether or not, and given what we mean by violent, it would be helpful if this court would say more about that, I think, and not just say that, because there's lots of arguments about what that could mean or not mean and lots of reasons why it might not be a violent felony or why it might be a violent felony. Actually, what I would ask you to do is give me an opportunity to address that issue further, because I think there's good reason to argue that this is not possibly a Johnson argument. If I send out a tweet that says, go look in the basement of this pizza place, that's going to be reckless conduct. The second thing, you mentioned that you would address the waiver, which would be helpful to me if you could just address how much of what you just said, I assume everything you just said you think is preserved and before us. I just wonder if you could just explain, from your point of view, why the government's argument about how some of these arguments were waived is wrong. Well, they argue that it's not that I then preserve it, which is actually the word that was used when the court asked me. I'm sorry, not yet, but preserve rather than waive. So all I would do is ask the court, in addition to everything else I've already said in the past in writing on this, to consider looking at the appendix. The part of the appendix that's under seal because it's part of the pre-sentence report. And on pages 48 and 49, with respect to the resisting arrest, one of the things I say there is both sections must qualify. Now, I don't use the word divisible, but I say both sections must qualify. I quote the count. I think that's preserving that issue. And then, with respect to ABPO, two things. One is I say in that document now, this statute, the ABPO, does not encompass multiple offenses. And I cite the count as to why we should win. Also, just prior to sentencing, this court decided the Anderson case. And in Anderson, the count was raised by the defendant, appellant, but the court declined to consider it because it hadn't been raised earlier. I've raised it earlier. I cited the case. I used the word divisibility. That's what's going on in that Anderson issue that Anderson raised. I cite the count. So I think, and Judge Ponson said, whatever else is going on, I want you to know, all these issues are preserved. Maybe Anderson didn't do it. So I think they're preserved, Your Honor. Thank you. Thank you. Good morning, Ms. Bisbee. Good morning. Well, almost morning. One more minute. Thank you, Your Honors. I'm here on behalf of the federal office. We have a number of cases that raise similar issues to those the court is addressing in Faust. And looking at the questions that the court requested supplemental briefing on, we would argue that, we do argue that, under Mathis, resisting arrest is indivisible, as the government has argued, and that, therefore, it is categorically not a violent felony. And we look at that through the manner and means versus element analysis. Elements are something that requires a, we have a required jury finding, and unanimity, which is what Tavares also said, is now the definition of an element, and that, for manner and means, unanimity is not required. For resisting arrest, there are no Massachusetts cases directly discussing whether or not these are, the two prongs are elements or manner and means, but the model jury instruction supports indivisibility. And the penalty is the same, which is another factor that Mathis said is relevant to determining whether something is an element or a manner and means. If the penalty is the same, that means towards manner and means. So, and as a bottom line, if something is not clear, then it is not a violent felony, because you don't have the certainty that Taylor and Mathis say you need before you can define an offense as a violent felony. In terms of whether that requires overruling Almanis, Weeks, and Kerrigan, say to the extent that the court was implicitly dividing the statute, because there's really no discussion of divisibility, these cases preceded, certainly Mathis, and mostly Descombes, so to the extent that they are saying they are implicitly divisible, yes, that portion would no longer be good law. And in terms of Johnson force, Johnson 1 force, none of the cases addressed whether the force required under Prong 1 of Massachusetts resisting arrest is violent under Johnson 1. And Johnson 1 defines it not only as force capable of causing physical pain or injury to another person, but that it connotes a substantial degree of force, great physical force or strength, and strong physical force. Now it suggests that the Massachusetts cases discussing stiffening of arms or making your body rigid so that you are not, they can't put you in a cruiser easily, does not constitute the kind of violent force used against the person of another that is required for a violent felony under Johnson 1. So to the extent that Almanis discussed force under the first prong of resisting arrest, that that also would no longer be good law and could be, and since it preceded Johnson, there is a, this court should take a look at how Johnson impacts Almanis. In terms of assault and battery, again, you have the Massachusetts courts dividing assault and battery into two theories of intentional and reckless with a further bifurcation of intentional into harmful and offensive, and Massachusetts appeals courts' decisions saying that jury unanimity is not required for either prong, which again, in our view, would make the offense indivisible. I realize that Tavares has said that there is a divisibility between intentional or recklessness, but I ask this court to take another look at the informed prophecy theory that Tavares was using, because again, Tavares looks at dicta from two different Supreme Court opinions, and says, well, we don't know exactly what effect that has. Mostrada clearly says no jury unanimity is required, but we are not going to accept that. We're going to look at SJC dicta and SJC decisions that points in different directions. So again, where you've got pointing in different directions, you do not have the degree of certainty that you need for a violent felony. Before you say, could you please address the Voisin issue? So if it is divisible and recklessness is distinct, is after Voisin, why doesn't recklessness qualify, given how Voisin construes the word use? Well, because I think Voisin itself says we are addressing a misdemeanor crime of domestic violence, and that the language used in that is different from the use of physical force against the person of another language that is used in Section 16. Specifically, given the way Voisin construes the word use, why does it matter that there's this other language? Because they also say that context is important, and that they are looking at use in the unique context of domestic violence. And you also have footnote four, which expressly says we are not resolving the issue of whether recklessness counts for Section 16, and I would say also for ACC. Thank you. Thank you. Crom, good afternoon. Good afternoon. I think the appropriate place to focus in this case, especially post-Tavares, is on the ADPO conviction, as we do in our brief. But I would briefly like to make a point with respect to resisting arrest. Our argument in resisting arrest was based on the laws that stood pre-Tavares, and it's our view that Tavares, by offering a somewhat different way of looking at how we conduct the analysis under Mathis, opens the possibility of an argument for resisting arrest that we did not make. So while we think that in this case the clearer path is within and consistent with Tavares, towards an assault and battle with a police officer, I want to note that fact, since we did concede it in our briefing on this appeal. With respect to assault and battle on a police officer, we take it now in light of Tavares to be established that the divisibility between the reckless and intentional forms is shown by Massachusetts law with the required specificity under Mathis, and that those two are now divisible in that respect. That leaves two paths for affirming, in our view, given the posture of this case. One, as Judge Barron has suggested, is if this court were defined under Boisin, that the reckless form qualifies, then under the reasoning of Davis and McArthur, this court could hold on plain error view, because the conduct as reflected in the unobjected two statements in the PSR and the documents is consistent with reckless conduct. A reasonable possibility cannot be shown of a different result on plain error view, and therefore the conviction can be affirmed. The alternative route would be to consider the divisibility of the two intentional forms, which we argue is also divisible. We made a somewhat different analysis, but we believe the analysis of Tavares also supports a finding of divisibility between the so-called offensive and harmful forms of assault and battery. And the essence of that analysis in Tavares is to look at the concepts and the ideas laid out in Santos about what are the circumstances under which, quote, the SJC will find that the jury does have to be instructed on specific unanimity. And essentially they go to two things. One is there's sort of a conceptual or substantive difference or dissimilarity between the different crimes. And the second is whether there are legal consequences or additional factors that flow from that. I think that's clearly true, both are true, when you look at the difference between the so-called offensive and harmful forms. The harmful form is harmful because there's a use of violence that would cause injury. What's the significance of the fact that it seems like the not-insubstantial practice has been to actually charge and prosecute and instruct juries as to these crimes differently from what Tavares suggests is what the Supreme Court would say is the right way to do it? Well, I mean, I think what... Because there's just a lot of people convicted then of elements that no jury was ever instructed on, but they were never charged with having violated them. It just seems surprising that that could be the case. Right. I think courts have struggled with, and talking to my colleagues across the country working with other courts of appeals addressing other states' laws, with sort of inconsistencies or facial inconsistencies between what courts actually do in the states and the categories that Mathis points out and what it's looking for in terms of the documents that you look at. This is a different point. This is... We're attributing to the state Supreme Court a view of what was required for instructions to juries in prosecuting all these crimes that we know is not how it was done. And it wasn't done that way not by accident. It was not done that way because state appellate courts were saying, you don't need to do it that way. And there were charging documents and model instructions and everything was to process these cases as if you don't have to do it that way. And we're now hypothesizing that the SJC thought all of those convictions were problematic. Well, on one point I do want to clarify there was a reference to Commonwealth v. Davis as being a case that actually found that there wasn't unanimity required with respect to the intentional forms. That case doesn't actually say that. I have the case and all it says is that the parties agreed that there was no dispute over the... We have other cases that are stronger than that. Right, but the... I understand the question, which is... And I think that is the problem in some sense with the Mathis analysis is calling on the courts to look at different... to look at the statute, to look at the instructions, but it doesn't give one primacy over another. And that's... So Mathis itself suggests that there are times when a court can look at the statute and find clues in terms of different penalties or other things that would lead it to believe there are different elements. The state could be doing something different in terms of what it requires in terms of unanimity. So there... I think there's some of that tension that's in here. I just wanted to go to that story, too. Mathis talks about if the state court has told you the answer, that's the end of the day. But no one's saying that the state court has told us the answer as to this crime. What Tavares holds is that we can guess what the answer from the SJC would be based on Santos, which is somewhat different than the case of Mathis. In Mathis, the actual crime there was described as such by the state supreme court. End of story. But I don't know of a case in which we would be saying, well, the federal court's going to say that the state supreme court would view this statute in a way that calls into question the legitimacy of years of convictions under this crime, which is what we're in the situation now of having said. Well, I mean, I'm not sure that it calls into question the legitimacy of it, but I understand, again, your point. We had argued, as you know, the elements of distinction in a slightly different way in our briefing, which is that the SJC has been very clear that the three different forms have different elements. It's used that very fact to find that they satisfy, the first two, harmful and reckless, satisfy its own ACCA, which requires it defined as an element that uses the words. But it doesn't require unanimity. But it has not apparently required unanimity. But again, on that point, and that's why I think in some sense this is a clear case, is that I think you can say the SJC has not said unanimity is not required. It's true that the issue has not come up to it or come before it, but given that in the specialty assault battery context, the law is exceptionally clear on the question that there are three different crimes with different material elements. But the only thing that isn't, you're saying it doesn't matter, unanimity is not the be-all and end-all. Well, as Your Honor knows, in our briefing, the position we took is that unanimity is a factor, but not a dispositive factor. It's not the requirement. What Mathis points to is talking about how the court characterizes those. So the label disconnected from the functional consequence of the label is what we should focus on? Well, I mean, again, Tavares takes a different view, and I view us as being bound to argue this in light of Tavares at this point. I mean, I think that in our view, Mathis didn't decide the issue, and we argued in our brief why we thought that might be the case, and that is that there was briefing on the question of unanimity specifically, and yet the Mathis court seemingly did not address it head-on by saying we resolve the split in this way or that way. They came up with a different view. What would be your reason for looking only at the formal label irrespective of the functional consequence of how it would affect how the jury would have to decide the issue? Well, I mean, I think the answer would be that Mathis has to find some way of categorizing things. I mean, essentially what we're looking at is trying to find a way for the federal system to categorize state cases, and they can, you know, again, that is the struggle that has led to the problem that Mathis is trying to solve, and they give us a set of factors to look at, and they look at it, you know, whether it's language, documents, shepherd documents, and other, you know, particular considerations, state precedent. So, again, our view was that it did not require unanimity in all cases, but that you could look at other factors where that particular factor had not been shown or was not clear on the state law. But, again, I do view that issue as somewhat resolved by Tavares in favor of the idea that unanimity is a crucial factor, as that court says, and, therefore, that's why we're trying to argue in light of that that one can still reach the same results. And, again, one can bypass the question of unanimity and addressing the two intentional forms by the road that Your Honor suggested, which is that if this Court were to find that the reckless form qualified a voisin, the analysis of MacArthur and Davis would suggest that this Court can affirm at that point because the conduct is certainly very, could very probably be considered reckless conduct that is in the unobjected two facts of the PSR and the shepherd documents. I have two questions. You filed with us extra record material in the form of the shepherd documents pursuant to the Quick Peek language the Supreme Court has used. So, my first question is, why did you do that? And my second question is, what conclusions do you think we are to draw from those documents if we consider them properly before us? Well, in terms of why we did it, I mean, we had not obtained them at the time of the initial filings, but by the time of supplementary briefing, we did have them, and we believe they were valid. But that's not much of a reason. No, but the further reason is that we, does that mean you guys go forward with asking for enhancements without knowing whether the documents support the enhancement? Well, again, this is before, some of these were viewed as categorical crimes in the past. I'm just curious, is that what's happened? Is that without anybody ever looking at the shepherd documents, the charging documents, they're just looking at the title of the crime, it's slapped down on the PSR, the government has no idea what was actually pled to, and then on appeal, we try to figure it all out? No, the policy of the office, and it has been for a long time since these decompasses started being raised, is to ask for the documents. But it is often the case that you get some of the documents and not all. And yet you still go forward with the enhancement? Well, take an example. If ABDW was determined, that both forms were determined to be qualifying, then the fact that we obtained the certified record of conviction is sufficient. I mean, it doesn't mean it wouldn't be helpful to know what else happened. No, but I'm just saying the case in which it was, from your perspective, since everything qualifies. Well, again, ABPO under Dancy, it qualified no matter what the form. So having a certified copy of the conviction was enough at the time. It doesn't mean we don't try to get additional documents. Now we try to get every document we can in light of the fact that some of these divisibility questions have been raised. But that's why those weren't available immediately. The reason we submitted them is we found there were cases where they'd been considered on judicial notice and we thought it was appropriate in light of the questions specifically asked about the quick peek to bring any documents before the court rather than not do so. But as we argue, we don't think the court needs to consider them to reach the result we're arguing for because of the unobjected-to statements in the case. You still haven't answered my question. What do you think the documents show? Well, what the documents show, and is that I think that is exactly, essentially, what the unobjected-to language in the PSR shows, which is reckless or intentional altercation with the officers in which kicks and punches were thrown and one officer was taken to the ground. A person is asked if they agree that this is what happened. They say that it did. Our argument is that the admitted facts, again, under a plain-error standard, this supports the argument that he cannot show a reasonable probability that there were different results because these facts are consistent with either harmful or reckless form of assault and battery. The odd thing is that usually at Davis, if I remember it, it's the admitted facts in the PSR. These are the... We have the Shepard documents. Right. And the Shepard documents, they have those facts in them, but they don't say, you're pleading to this element or this crime. They say, you're pleading to ABPO. Were you informed of all the elements? Yes, I was informed of all the elements. Well, it's not very helpful for a divisible statute. Right. And there's all this cautionary language that don't take too seriously the factual representations in a plea agreement because there's no incentive to challenge the facts at that time because you don't see down the road all that's going to happen that could lead to an ACCA enhancement later on. And you're... So for us to affirm, we'd have to basically... Now we have the documents, and you're saying those documents, without anybody having a chance to argue it, just manifestly show that the qualifying problem is what he pled to, even though there's no statement to that effect. Right.  that say that under the modified categorical approach, it's necessary that the defendant have actually been instructed of the different qualifying parts. I mean, it has to be shown that, you know, the court has to find by a preponderance that the qualifying form occurs. But again, I don't... And I don't think anyone has presented a case that says that the judge... But there's no argument one way or the other on that. Right. So I don't think we just remand and let the district court perform that analysis of the documents. But again, I think that's why the standard review... I'm sorry. ...is an important issue, Your Honor. Do you agree with that? Excuse me, what part? What I just said, which was that you could remand... No, no, that's what I was... ...busy talking. Judge Barron said, so why don't we just remand and let these arguments be made to the district court. I want to ask you, did you agree with that? I don't. No, I did not. I was attempting to respond, Your Honor. We don't. And the reason was, again, standard of review. We think in this... the way this case is postured, the burden is on the defendant to show a reasonable probability of different results. Yeah, but usually we do that in connection with a case in which there are no Shepard documents before us. That's Davis, that's Serrano Mercado, that's those cases. And you can't come up to us and say without any explanation of why the Shepard documents could help you that we have to remand to get them. But you've bypassed that by providing us with those documents. And if you just look at them, it's not obvious on their face, so there's a reasonable probability that if you looked into it, a district court might make a preponderance finding other than the one you're suggesting about what those documents show as to whether it was the qualifying offense or not that was the thing. So he's met his plain error prejudice standard, so why wouldn't we just remand? Well, I think that comes down to precisely what Your Honor just said, which is that we would respectfully disagree that on this record that there's a reasonable probability of finding that it was not the intentional or reckless forms. Therefore, under either resolution of the divisibility issue, he could not show prejudice. Your brother just argued to us we shouldn't remand even though the arguments haven't yet been made because he'd like to make the arguments to us. That's what I heard. Hmm. Did you hear that? Something like that, yes, Your Honor. I mean, we... I guess we understand it to be, again, that on the current posture of the case, on the record, this court could decide the issue. And it's, again, based on what Your Honor has said, is what we, in our view, the record, the submission of the records does not weaken but only strengthens the view that the unobjective statements in the PSR indicate, which is the lack of a reasonable probability. I understand in cases like McArthur and Davis, the documents weren't there, and there was sort of, in some sense, perhaps it was a suggestion that it would be hopeless to remand, that nothing could be gained from it. But in this case, again, providing the court, because we've been asked the question and we didn't want to be viewed as holding back anything we had relevant to the inquiry, we think they support deciding it now rather than remanding. Thank you, Your Honor. Thank you. Thank you. Mathis figures very prominently into the government's argument and the court's questions and the analysis. And to the extent that Mathis is an important case here and that some of the decisions that are being made rely upon Mathis, there's no way that the defendant could have preserved that issue. So we can't be faulted for not raising Mathis-related issues. The government claims that they would get these documents once the scamp was raised. Interestingly, the scamp was raised by Faust as early as objections to the PSR and continuously through and in his brief. And the government did not even address, did not ever address the scamp in the district court, did not address it even in their original brief here. And they never asked to be able to have the opportunity to put in these documents that we're now talking about, the Shepard documents. And I cite to you U.S. versus Ramos-Gonzalez at 775 F. 3rd 483 2015 where the government did not raise below issues about wanting to have a qualified review and their professionalism. Can you follow that up on that case please? Yes, I will sir. Thank you. Thank you.